IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LYNN LAFIANDRA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Civil Action |
| v. | : | |
| | : | No. 21-3261 |
| ACCENTURE LLP, | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

**MEMORANDUM**

J. Younge                                                                                                   October 31, 2023

**I.      INTRODUCTION**

Currently before this Court is Defendant Accenture LLP's Motion for Summary Judgment.  (ECF No. 51.)  The Court finds this Motion appropriate for resolution without oral argument.  Fed R. Civ. P. 78; L.R. 7.1(f).  For the reasons set forth in this Memorandum, Defendant's Motion will be Granted.

**II.     FACTUAL BACKGROUND**

Plaintiff Lynn LaFiandra was employed by Defendant Accenture LLP (hereinafter "Accenture") from December 18, 1995, until her termination on September 25, 2020.  (Statement of Undisputed Material Facts (hereinafter "SUMF") ¶ 4, ECF No. 51-3.)  Plaintiff was 59 years old on the date of her termination.  (Amended Complaint (hereinafter "Am. Compl."), ¶ 136, ECF No. 10.)  At the time of termination, Plaintiff worked as a Senior Principal conducting research and designing surveys for company projects.  (SUMF ¶ 6, ECF No. 51-3.)  Barbara Harvey, a Managing Director at Accenture during all relevant times, was Plaintiff's Career Counselor – responsible for providing feedback to their assigned employees – from 1999 to

2014. (SUMF ¶ 8-9, ECF No. 51-3.) In 2014, Francis Hintermann became Plaintiff's Career Counselor and remained so until her termination. (SUMF ¶ 7, ECF No. 51-3.) Mr. Hintermann, who is four years Plaintiff's junior, was the ultimate decision-maker in Plaintiff's termination. (SUMF ¶¶ 7, 53, ECF No. 51-3; Plaintiff's Exhibits, ECF No. 56-7, p. 22.)

On July 8, 2015, Plaintiff was hit by a car and suffered a head injury. (SUMF ¶ 10, ECF No. 51-3.) Following her injury, the Plaintiff was placed on short-term disability and returned to work on a part-time schedule and with a lower chargeability target. (SUMF ¶¶ 12-14, ECF No. 51-3.) Due to the nature of her injuries, which included headaches, brain fog, and difficulties with screen time, Plaintiff requested, and was granted, an accommodation limiting her screen time to six hours a day. (SUMF ¶¶ 15-16, 32, ECF No. 51-3.) Because her duties required screen time, this accommodation limited her schedule to thirty hours a week and persisted throughout the rest of her employment with Accenture. (SUMF ¶¶ 16-18, ECF No. 51-3.) In November 2019, Plaintiff applied for and received an accommodation under the Family Medical Leave Act (hereinafter "FMLA") that covered her for the two hours per day that she was not able to work given her accommodated schedule. (Plaintiff's Exhibits, ECF No. 56-13, p. 24; ECF No. 56-14, p. 4.) Pursuant to Plaintiff's accommodation, she had been paid her full salary during the five years following her injury, apart from three pay periods, while working six out of the eight hours of a standard workday. (SUMF ¶ 20, ECF No. 51-3.)

Following her injury and resultant accommodation, Plaintiff has alleged a pattern of antagonism stemming from her continued use of this accommodation, including comments expressing frustration with the length of the accommodation and her work performance. (Amended Complaint, ¶¶ 59-60, 63-69, 72-77, 81-85, 93-94108, ECF No. 10.) Human Resources (hereinafter "HR") representatives discussed these accommodations with Plaintiff's

supervisors, though there are no notes from any relevant meetings or from the meeting that ultimately decided Plaintiff's termination. (Plaintiff's Exhibits, ECF No. 56-7, pp. 32-38; ECF No. 56-14, pp. 4-8, 16-17, 19, 21.) Every request for an accommodation was granted, and Plaintiff received full pay for almost the entirety of her remaining years with Accenture for her part-time work. (SUMF ¶¶ 19-20, ECF No. 56-3.) Plaintiff had received largely positive performance reviews, with the exception of a note from her 2018-2019 performance review about a need for more collaboration, but there was no written performance review for work done in 2020, the year of her termination. (Plaintiff's Exhibits, ECF No. 56-6, p. 26; ECF No. 56-8, p. 2.) Plaintiff has also alleged a longstanding culture disfavoring older employees, including by giving less consideration to their long-term career plans. (Amended Complaint, ¶¶ 134-143, ECF No. 10.)

Accenture underwent a global workforce reduction in 2020, and each business area was tasked with identifying five percent of its employees to be transitioned out of their roles. (SUMF ¶¶ 42-43, ECF No. 51-3.) Accenture ostensibly has a system for ensuring that employees are not fired for impermissible reasons, whereby HR will probe into the proffered justifications to ensure a lack of discriminatory intent. (SUMF ¶ 56, ECF No. 51-3.) Plaintiff was ultimately selected for termination and was notified of this on September 25, 2020. (SUMF ¶ 53, ECF No. 51-3; Plaintiff's Exhibits, ECF No. 56-7, pp. 22-24.) Defendant's HR representative, Holly Tracy, stated that she would not have had access to the underlying evidence supporting the termination decision to be able to verify its legitimacy. (Plaintiff's Exhibits, ECF No. 56-13, pp. 13, 15.)

Plaintiff filed her Complaint on July 22, 2021, after exhausting her administrative remedies, alleging violations of the Americans with Disabilities Act (hereinafter "ADA"), the Age Discrimination in Employment Act (hereinafter "ADEA"), and the Pennsylvania Human

Relations Act (hereinafter "PHRA"), tortious interference with contractual relationships against Ms. Harvey, and defamation against Ms. Harvey and Mr. Hintermann. (Complaint, ECF No. 1.) The Amended Complaint was filed on November 14, 2021. (Am. Compl., ECF No. 10.) Defendant's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) was partially granted as to the claims against Ms. Harvey and Mr. Hintermann for tortious interference with contractual relationships and defamation. (Order Granting Partial Motion to Dismiss, ECF No. 26.) Defendant filed the presently-considered Motion for Summary Judgment on the remaining claims on August 28, 2023. (ECF No. 51.)

### III. LEGAL STANDARD

Summary judgment is appropriate if the movant shows "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both material and genuine. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 24-49 (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id*.

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating that the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.,* 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a

genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV. DISCUSSION

### A. Plaintiff Has Not Met Her Burden in Establishing That She Was Subjected to Disability-Related Retaliation.

Both the ADA and the PHRA prohibit discrimination against disabled individuals, including retaliation against employees who request accommodations for their disabilities. 42 U.S.C. §§ 12101, *et seq*; 43 Pa. Const. Stat. Ann. §§ 951, *et seq*.[1] Disability retaliation claims are subject to the burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, wherein after the plaintiff employee first makes a *prima facie* case of discrimination, the defendant employer then has the burden of showing a legitimate, nondiscriminatory reason for the adverse employment decision and finally, the plaintiff then has the burden of showing that

---

[1] Pennsylvania courts "generally interpret the PHRA in accord" with the parallel provisions of Title VII, the ADA, and the ADEA. *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996), and this Court does so here.

the reason advanced was pretextual.  411 U.S. 792 (1973); *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000).  A *prima facie* case of disability retaliation requires that (1) plaintiff engaged in activity protected by the ADA, (2) plaintiff was subject to an adverse employment action "after or contemporaneous with the employee's protected activity," and (3) there is a causal connection between the protected activity and the adverse action.  *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997).  Here, it is undisputed that the plaintiff has satisfied the first two prongs of a prima facie case because requesting and making use of an accommodation is activity protected by the ADA and plaintiff was subsequently terminated.

Plaintiff is not able to establish a causal connection between her request for and use of her accommodation and her termination.  In determining whether a Plaintiff has adequately pleaded causation, courts have considered the temporal proximity between the protected activity and the adverse employment action and circumstantial evidence of an employer's animus towards that protected activity.  *Long v. Spalding Auto., Inc.*, 337 F. Supp. 3d 485, 491-92 (E.D. Pa. 2018); *see also Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) (finding that evidence of a pattern of antagonism or retaliatory animus, inconsistent reasons given for termination, and temporal proximity may all be probative of a causal connection). Here, Plaintiff points to her November 2019 FMLA application and subsequent accommodation as evidence of the temporal proximity needed to satisfy her burden.  However, these actions occurred approximately ten months before termination of her employment and are insufficiently proximate to support an inference that the termination occurred because of the accommodation. *See Long*, 337 F. Supp. 3d at 491 (finding that nine months is a prolonged period and is not unusually suggestive of a retaliatory motive).  Additionally, Plaintiff can point to only one instance following her FMLA application that may be interpreted as suggesting some degree of

frustration with Plaintiff's accommodation: her 2018-2019 performance review with Mr. Hintermann wherein Mr. Hintermann allegedly asked about her FMLA application and stated that "it's been a long time that you have been on disability." (Plaintiff's Exhibits, ECF No. 56-14, p. 23.) Approximately nine months after this meeting, Plaintiff was terminated. This is insufficient to meet Plaintiff's burden in making a *prima facie* case of disability retaliation.

Plaintiff appears to argue that the causal connection between Plaintiff's FMLA application and her ultimate termination is established by Mr. Hintermann's November 18, 2019 email to HR regarding her FMLA application, wherein he stated that "it seems to be a never ending story" and, later, "Regarding Lynn's long term future, it is a completely different discussion that I will address with you through a different stream." (Plaintiff's Exhibits, ECF No. 56-14, pp. 6.) On the same day, in a different email, Mr. Hintermann stated that, while not urgent, there needed to be a discussion about Plaintiff's long-term future with Accenture. (Plaintiff's Exhibits, ECF No. 56-14, p. 8.) This, Plaintiff alleges, shows that, on the same day Mr. Hintermann had learned about her FMLA application, November 18, 2019, he had determined that "Plaintiff's career with Defendant Accenture was over." (Plaintiff's Memorandum in Response to Motion for Summary Judgment, ECF No. 56-1, p. 11.) However, Plaintiff's career was not, in fact, over, and she remained employed at Accenture for the next ten months. Plaintiff's suggested conclusions of law would require the Court to speculate that Mr. Hintermann's email evidenced an intention of Defendant to bide its time until a more appropriate opportunity to terminate Plaintiff arose that would not be tied to the accommodation. There is simply insufficient evidence to support such a conclusion.

Even if this Court accepted Plaintiff's argument that there was a sufficient causal connection to support a *prima facie* case of disability retaliation, Plaintiff has not met her burden

in showing that the evidence presented could reasonably support a finding of intentional discrimination. *See Hook v. Ernst & Young*, 28 F.3d 366, 375 (3d Cir. 1994) (noting that "a plaintiff whose employment position is eliminated in a . . . work force reduction carries a heavier burden in supporting charges of discrimination than does an employee discharged for other reasons") (internal quotations omitted). The employer's "relatively light" burden in presenting a legitimate, nondiscriminatory reason for termination, *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994), is easily met here. The Defendant need only introduce evidence which, if accepted as true, would "permit the conclusion that there as a nondiscriminatory reason" for the adverse employment action. *Id.*

The two proffered reasons were role elimination and comparative performance, all in the context of a company-wide reduction in force. (Hintermann Declaration ¶ 17, ECF No. 51-6.) This easily satisfies the second step of the *McDonnell Douglas* analysis. While Plaintiff argues that this is inconsistent and that she was informed only that role elimination was the justification for her termination (Plaintiff's Exhibits, ECF No. 56-7, pp. 22-24), a Defendant can be presented with two valid reasons for termination, and it does not make either justification illegitimate to relay only one when either would be sufficient. Additionally, that Accenture's HR did not probe deeper into the reason for termination to conclusively determine that it was not pretextual, which Accenture had stated it does to avoid impermissibly-motivated employment decisions, does not then make an otherwise-sufficient justification illegitimate.

The burden then shifts to the plaintiff to show that this legitimate, nondiscriminatory reason serves as a pretext for intentional discrimination. *McDonnell Douglas*, 411 U.S. at 804. At the summary judgment stage, the plaintiff's burden at this third step of the *McDonnell Douglas* framework requires that they point "to some evidence, direct or circumstantial, from

which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764. Evidence of an invidious discriminatory reason is not necessary where "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). This can be shown by "such weaknesses, implausibilities . . . or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence." *Fuentes*, 32 F.3d 759 at 765. It is a high burden, requiring that a factfinder be able to reasonably find that *each* proffered reason was "either a *post hoc* fabrication or otherwise did not actually motivate the employment action." *Id.* at 764. The relevant inquiry is not an employee's relative competence or the accuracy of the employer's evaluation but whether the employment decision was motivated by discriminatory animus. *Id*. at 765.

  Defendant has pointed to two reasons for the termination decision, both of which, in isolation, would be sufficient: role elimination and comparative performance. It is undisputed by either party that Plaintiff's work was dispersed among various remaining or newly-hired employees such that her role no longer existed in full. (SUMF ¶ 74, ECF No. 51-3.) This is further supported by Mr. Hintermann's November 18, 2019 email in which he stated, "we have to keep evolving as a team and [Plaintiff's] area is the only area where I cannot do much in the US. What can we do to prepare for the future?" (Plaintiff's Exhibits, ECF No. 56-14, p. 8.) The impracticality of maintaining Plaintiff's position, which appears to be a long-term concern of Defendant's, is a credible justification for termination.

Defendant had also indicated that Plaintiff ranked in the bottom of her peer group performance-wise, citing a past performance review that stated that she was not collaborating enough.  (Plaintiff's Exhibits, ECF No. 56-8, p. 2.)  Defendant has never contended that Plaintiff was a bad employee and has instead argued that, because of the company-wide reduction in force, they had to make difficult decisions.  *See Marione v. Metro Life Ins. Co.*, 188 F. App'x 141, 144 (3d Cir. 2006) ("We recognize that in a [reduction in force], a company is often forced to terminate worst of the best") (internal quotation omitted).  Plaintiff points to the lack of notes in termination meetings, the lack of a 2020 performance review, and the poor performance commentary for retained members of her peer group, while she received no performance commentary other than that it was at the bottom, as reason to disbelieve Defendant's proffered explanation for termination.  (Plaintiff's Exhibits, ECF No. 56-7, pp. 8-14.)  However, it is not for the Court to determine whether it would have parsed out this difficult decision differently, nor is it necessary to the Court's assessment of this issue.  *See Healy v. New York Life Ins. Co.*, 860 F.2d 1209, 1216 (3d Cir. 1988) ("Our inquiry . . . is not an independent assessment of how we might evaluate and treat a loyal employee.")  It remains that small distinctions among good employees had to be made.  The facts as alleged by Plaintiff do not do enough to suggest that a reasonable factfinder could find that either of Defendant's justifications – role elimination and comparative performance – are unworthy of belief.

Plaintiff's evidence of an alleged pattern of discriminatory animus is equally unconvincing.  Mr. Hintermann had, during various conversations with HR about Plaintiff's requested accommodations, inquired into whether he can ask questions about its necessity and whether "there is a timeline and an end to it in the foreseeable future."  (Plaintiff's Exhibits, ECF No. 56-5, p. 11; ECF No. 56-14, p. 6.)  He additionally stated that "it cannot be permanent" or

"mentioned in some type of rigid medical arrangement," that he has "concerns that [he] would like to discuss," and that "it seems to be a never ending story." (Plaintiff's Exhibits, ECF No. 56-5, p. 11; ECF No. 56-14, pp. 6, 19, 21.) These are not impermissible statements to be construed by the Court as suggestive of discriminatory animus in of themselves. The law permits, and indeed encourages, an interactive process between employers and employees to determine what accommodations would be reasonable to address a disability, which necessarily requires questions about the impact of the disability and how the accommodation impacts the performance of the essential functions of the job. 29 C.F.R. § 1630.2(o)(3). Defendant cannot face liability for evidence which suggests its employees made efforts to make appropriate decisions in navigating Plaintiff's disability and the requirements of the job.

Plaintiff also suggests that Ms. Harvey's performance review from 2016, which noted that it was difficult to complete their shared demanding project to a satisfactory level, though she "understand[s] that Lynn's health was not good and that this was the cause," demonstrated discriminatory animus even from early on. (Plaintiff's Exhibits, ECF No. 56-6, p. 4.) Such a conclusion requires quite a stretch in logic. Not only does this review spend most of its time praising Plaintiff's work, but Ms. Harvey was also not obligated to write an inaccurate description of what happened and wholly avoid commentary on the difficulties presented by Plaintiff's accommodation in order to avoid a charge of discrimination. *See Shaner*, 204 F.3d at 505 ("[I]t is important that an employer not be dissuaded from making what he believes is an appropriate evaluation [for] fear that the evaluated employee will charge that the evaluation was retaliatory"). Here, Ms. Harvey provided what appears to be an honest and sympathetic evaluation of Plaintiff's performance, which in no way suggests discriminatory animus to this

Court. Therefore, the Court finds that Plaintiff has not met her burden in showing that she was subjected to disability retaliation.

      **B.    Plaintiff Has Not Met Her Burden in Establishing That She Was Subjected to Age Discrimination.**

Both the ADEA and the PHRA protect employees over the age of forty from termination based on their age. 29 U.S.C. §§ 623(a), 631(a); 43 Pa. Const. Stat. Ann. §§ 951, *et seq*. A successful age discrimination action requires the plaintiff to prove that age was the but-for cause of the adverse employment action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). This can be proven through direct or circumstantial evidence. *McNulty v. Citadel Broad. Co.*, 58 F. App'x 556, 562 (3d Cir. 2003). Absent direct evidence, courts will apply the *McDonnell Douglas* burden-shifting framework. *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008). A *prima facie* case of age discrimination requires the plaintiff to prove that (1) they are at least forty years old; (2) they are qualified for the position; (3) they suffered an adverse employment decision; and (4) they were ultimately replaced by an "employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015). It is undisputed that the Plaintiff has established the first three prongs of the *prima facie* case because Plaintiff was more than forty years old, was qualified for her position, and was ultimately terminated.

The fourth prong in an age discrimination action is relaxed in circumstances where there was a reduction in force. *Torre v. Casio, Inc.*, 42 F.3d 825, 831 (3d Cir. 1994). In such a circumstance, the fourth prong can be established where younger employees were retained and assumed the responsibilities of the aggrieved former employee even in the absence of a hired replacement. *Id.* at 831-32. In showing that the plaintiff was subjected to less favorable treatment absent direct replacement, they must be able to show that the employer retained a

sufficiently younger, similarly-situated employee. *Monaco v. Am. Gen. Assurance Co.*, 359 F.3d 296, 301 (3d Cir. 2004). Here, Plaintiff has alleged that her position was filled by both the dispersal of some of her responsibilities to retained, younger employees *and* by the hiring of a new, younger employee immediately following her termination who took over her role on a large project. (Plaintiff's Exhibits, ECF No. 56-11, pp. 24-25, 28.) Given the flexible nature of the fourth prong in reduction-in-force cases, this combination of assumed responsibilities and direct replacement would satisfy the remaining element of an age discrimination *prima facie* case.

As discussed earlier, either of Defendant's professed reasons for terminating Plaintiff – role elimination or comparative performance – would constitute a legitimate, nondiscriminatory justification, especially in the context of a company-wide reduction in force. Plaintiff's burden is then to demonstrate evidence from which a reasonable factfinder could infer that the proffered reasons serve as pretexts for intentional discrimination, which Plaintiff is unable to do here.

Over her twenty-five-year history at Accenture, Plaintiff alleges (1) that there was a general culture disfavoring older employees, as evidenced by the statement "Let's see how millennials do" and a focus on millennial career development, (2) that, in 2014, Mr. Hintermann discussed short-term rather than long-term career objectives with her, (3) and that, during her termination meeting, she mentioned her age vis-à-vis potential reemployment difficulties and Mr. Hintermann replied "I hear you on that of course." (Am. Compl. ¶¶ 135, 140; Plaintiff's Exhibits, ECF No. 56-7, pp. 23-24; ECF No. 56-10, p. 24.) This is wholly insufficient to establish pretext. Plaintiff was the oldest member of her otherwise-retained peer group by only five years, and only four years older than the one who made her termination decision. (Plaintiff's Exhibits, ECF No. 56-13, pp. 4-6; Defendant's Motion for Summary Judgment, ECF No. 51-2, p. 2.) That there were sparse, largely innocuous comments regarding company

development does nothing to show that Plaintiff was disfavored due to her age. Plaintiff could point to only one statement directly implicating her age that preceded her termination, and this was in 2014. As such, the Court finds that a reasonable factfinder could not find that Plaintiff met her burden in showing that the legitimate, nondiscriminatory reasons offered by Defendant served as a pretext for age discrimination.

        C.      **The Allegedly Contradictory Statements in Defendant's Affidavits Do Not Present Genuine Issues of Material Fact.**

Plaintiff, through its Motion to Strike Affidavits (contained within ECF No. 56), alleges that various statements in Defendant's affidavits, submitted in support of its Motion for Summary Judgment, contradict the record. The Court finds that they do not and that, where they may be interpreted as doing so, they do not create an impediment to the granting of summary judgment. Pursuant to the sham affidavit doctrine, a district court may, in its discretion, disregard "a nonmovant's affidavit [that] contradicts earlier deposition testimony without a satisfactory or plausible explanation" to avoid summary judgment. *Daubert v. NRA Group, LLC*, 861 F.3d 382, 391-92 (3d Cir. 2017). The application of this doctrine is flexible. *Id.* The Court will note that Defendant is the movant in this matter, while the traditional application of this doctrine is to the nonmovant. Further, the Court does not agree that Plaintiff's supervisors' lack of memory as to the content of certain meetings discussing her performance contradicts their declarations reiterating the reasons for her termination. Additionally, for the reasons stated previously, the Court does not find that the lack of further inquiry into the reasons behind Plaintiff's termination by Accenture's HR representatives affects its determination that Plaintiff has not met her burden. As such, Plaintiff's Motion to Strike Affidavits is Denied.

V.    **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Summary Judgment is Granted.

An appropriate Order follows.

**IT IS SO ORDERED.**

                                                            BY THE COURT:

                                                            /s/ John Milton Younge
                                                            **Judge John Milton Younge**